# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES FINN, Individually and On Behalf of Himself and All Others Similarly Situated, | ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DORAL FINANCIAL CORP., | ) |
| | ) |
| Defendants. | ) |

**ECF CASE**

Civil Case No: 1:05-CV-4014-RO

[Additional Captions to Follow]


## MEMORANDUM OF LAW IN SUPPORT OF
## THE 1199SEIU HEALTH CARE EMPOYEES PENSION FUND,
## ACTIVEST INVESTMENTGESELLSCHAFT MBH AND ROBERT I. FOX'S
## MOTION FOR CONSOLIDATION AND FOR APPOINTMENT OF
## LEAD PLAINTIFFS AND LEAD COUNSEL

| | |
|---|---|
| HAROLD FAVERMAN, On Behalf of Himself and All Others Similarly Situated, | ) ) | Civil Case No. 1:05-CV-4026-RO |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DORAL FINANCIAL CORP., SALOMON LEVIS, ZOILA LEVIS, DAVID LEVIS, and RICARDO MELENDEZ, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | |
|---|---|
| BRUCE SIMONS, Individually and on Behalf of All Others Similarly Situated, | ) ) | Civil Case No. 1:05-CV-4074-RO |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DORAL FINANCIAL CORP., SALOMON LEVIS, RICHARD F. BONINI, RICARDO MELENDEZ, EDGAR M. CULLMAN, JR., JOHN L. ERNST, EFRAIM KIER, ZOILA LEVIS, A. BREAN MURRAY, HAROLD D. VICENTE, JOHN B. HUGHES, MARIO S. LEVIS, PETER A. HOFFMAN, and PRICEWATERHOUSECOOPERS, LLP, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |
| | ) | |

| | |
|---|---|
| MARC C. GROBLER, On Behalf of Herself and All Others Similarly Situated, | ) ) | Civil Case No. 1:05-cv-4077-RO |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DORAL FINANCIAL CORP., SALOMON LEVIS, RICHARD F. BONINI, and RICARDO MELENDEZ, | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| GALAXY ELECTRONICS CORP., On Behalf of Themselves and All Others Similarly Situated, | ) ) ) | Civil Case No. 1:05-CV-4087-RO |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| DORAL FINANCIAL CORP., SALOMON LEVIS, RICHARD F. BONINI, RICARDO MELENDEZ, and PRICEWATERHOUSECOOPERS, LLP, | ) ) ) ) | |
| Defendants. | ) ) ) | |
| CARLTON ORCHINIK, Individually and On Behalf of All Others Similarly Situated, | ) ) | Civil Case No. 1:05-CV-4098-RO |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| DORAL FINANCIAL CORP., SALOMON LEVIS, RICHARD F. BONINI, and RICARDO MELENDEZ, | ) ) ) | |
| Defendants. | ) ) | |
| BEN BERNIE, TRUSTEE, Individually and On Behalf of All Others Similarly Situated, | ) ) | Civil Case No. 1:05-CV-4113-KMW |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| DORAL FINANCIAL CORP., SALOMON LEVIS, ZOILA LEVIS, DAVID R. LEVIS, and RICARDO MELENDEZ, | ) ) ) ) | |
| Defendants. | ) ) ) | |

| | | |
|---|---|---|
| THANH D. VU, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | Civil Case No. 1:05-CV-4141-RO |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| DORAL FINANCIAL CORP., SALOMON LEVIS, RICHARD F. BONINI, and RICARDO MELENDEZ, | ) ) ) | |
| Defendants. | ) ) | |
| MICHAEL FAITH, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | Civil Case No. 1:05-CV-4233-RO |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| DORAL FINANCIAL CORP., SALOMON LEVIS, ZOILA LEVIS, DAVID LEVIS, and RICARDO MELENDEZ, | ) ) ) ) | |
| Defendants. | ) ) | |
| SAMUEL BORGER, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | Civil Case No. 1:05-CV-4250-JSR |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| DORAL FINANCIAL CORP., SALOMON LEVIS, ZOILA LEVIS, RICHARD F. BONINI, and RICARDO MELENDEZ, | ) ) ) ) | |
| Defendants. | ) ) | |

| | |
|---|---|
| ANDREW LAPAT, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| | ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| DORAL FINANCIAL CORP., SALOMON LEVIS, RICHARD F. BONINI, and RICARDO MELENDEZ, | ) ) ) |
| Defendants. | ) ) |

Civil Case No. 1:05-CV-4294-RO

| | |
|---|---|
| ALLEN SCHEINER, Individually and On Behalf of All Others Similarly Situated, | ) ) |
| | ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| DORAL FINANCIAL CORP., SALOMON LEVIS, ZOILA LEVIS, DAVID R. LEVIS, and RICARDO MELENDEZ, | ) ) ) ) |
| Defendants. | ) ) |

Civil Case No. 1:05-CV-4413-RO

| | |
|---|---|
| BRUCE M. BARICH, Individually and On Behalf of All Others Similarly Situated, | ) ) |
| | ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| DORAL FINANCIAL CORP., SALOMON LEVIS, RICHARD F. BONINI, and RICARDO MELENDEZ, | ) ) ) |
| Defendants. | ) ) |

Civil Case No. 1:05-CV-4973-RO

| | |
|---|---|
| MICHAEL JANICEK, Individually and On Behalf of All Others Similarly Situated, | ) <br> ) ) Civil Case No. 1:05-CV-5212-RO |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| DORAL FINANCIAL CORP., SALOMON LEVIS, RICHARD F. BONINI, and RICARDO MELENDEZ, | ) ) ) ) |
| Defendants. | ) ) ) |
| GUEORGUI GAGOV, Individually and On Behalf of All Others Similarly Situated, | ) ) ) Civil Case No. 1:05-CV-5213-UA |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| DORAL FINANCIAL CORP., SALOMON LEVIS, ZOILA LEVIS, DAVID R. LEVIS, RICARDO MELENDEZ, RICHARD F. BONINI, EDGAR M. CULLMAN, JR., MARIO LEVIS, and PRICEWATERHOUSECOOPERS, LLP | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |
| ARGENT CLASSIC CONVERTIBLE ARBITRAGE FUND (BERMUDA) LTD. and ARGENT LOWLEV CONVERTIBLE ARBITRAGE FUND LTD., individually and On Behalf Of All Others Similarly Situated, | ) ) ) Civil Case No. 1:05-CV-5565-UA ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| DORAL FINANCIAL CORPORATION, SALOMON LEVIS, ZOILA LEVIS, RICHARD F. BONINI, EDGAR M. CULLMAN, JR., JOHN L. ERNST, JOHN B. HUGHES, EFRAIM KIER, HAROLD D. VICENTE, RICARDO MELENDEZ, and LUIS APONTE, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT ..................................................... 1

II.     STATEMENT OF FACTS ........................................................ 3

III.    OVERVIEW OF APPLICABLE LAW ................................................ 6

IV.     THE ACTIONS SHOULD BE CONSOLIDATED ....................................... 7

V.      MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS FOR THE CLASS ....... 9

        A.     Movants' Motion to Serve as Lead Plaintiffs Is Timely ........................................ 9

        B.     Movants are Believed to Have the Largest Financial Interest in the Relief Sought
               by the Class ........................................................... 10

        C.     Movants Satisfy the Typicality and Adequacy Requirements of Rule 23 ............ 12

               1.     Movants' Claims Are Typical of the Claims of the Class ................................ 13

               2.     Movants Will Fairly and Adequately Represent the Interests of the Class ...... 13

VI.     THE COURT SHOULD APPROVE MOVANTS' CHOICE OF LEAD COUNSEL..... 14

VII.    CONCLUSION................................................................. 15

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Albert Fadem Trust v. Citigroup Inc.*, 239 F. Supp. 2d 344 (S.D.N.Y. 2002)..........................7, 11

*California Public Employees' Retirement System v. The Chubb Corp.*, 127 F. Supp. 2d 572 (D.N.J. 2001)..............................................................................................11

*In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39 (D. Mass. 2001) ............................13, 14

*In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286 (E.D.N.Y. 1998) ................................................10

*In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42 (S.D.N.Y. 1998) ........................12, 13

*In re PRI Automation, Inc. Sec. Litig.*, 145 F. Supp. 2d 138 (D. Mass. 2001) ...............................7

*Sofran v. LaBranche & Co.*, 220 F.R.D. 398 (S.D.N.Y. 2004) .........................................12, 13, 14

### OTHER AUTHORITIES

Private Securities Litigation Reform Act of 1995 ....................................................................*passim*

Fed. R. Civ. P. 23 ............................................................................................................... 12-13

Fed. R. Civ. P. 42(a) ....................................................................................................................7, 9

H.R. Conf. Rep. No. 104-369, at 32, 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 1995 WL 709276 (Nov. 28, 1995).........................................................................2, 11, 12

S. Rep. No. 104-98, at 10 *reprinted in* 1995 U.S.C.C.A.N. 679, 1995 WL 372783 (June 19, 1995) .............................................................................................................................12

The 1199SEIU Health Care Employees Pension Fund ("1199SEIU Fund"), Activest Investmentgesellschaft mbH ("Activest") and Robert I. Fox ("Fox") (collectively, "Movants") respectfully submit this memorandum of law in support of their motion for: (i) consolidation of the Actions (described below); (ii) their appointment as Lead Plaintiffs in the Actions; and (iii) approval by the Court of their selection of Lead Counsel for the putative class. Movants purchased Doral Financial Corp. ("Doral" or the "Company") securities during the period from January 17, 2001 through May 26, 2005, inclusive (the "Class Period") and suffered damages as a result of the Defendants' alleged violations of the federal securities laws.[1]

## I.    PRELIMINARY STATEMENT

This Court should consolidate the various securities class actions against Doral and the other Defendants (the "Actions") and appoint Movants as Lead Plaintiffs for the class.[2] Consolidating the Actions is appropriate because each action involves common factual and legal issues. Each of the Actions alleges that Defendants violated the federal securities laws by failing to disclose the following: (1) the Company's assets were materially overvalued; (2) the Company's net income and net gain on mortgage loan sales were materially overstated; (3) the Company's return on equity and return on capital were materially overstated; and (4) the Company's reported net capital was materially overstated. Defendants also failed to disclose to investors that the Company's risk management, hedging strategies, and internal controls were

---

[1]    Each Movant has submitted an affidavit or declaration setting forth such Movant's Doral securities transactions. *See* Exhibits C-E to the Affidavit of Richard A. Speirs in Support of the 1199SEIU Health Care Employees Pension Fund, Activest Investmentgesellschaft mbH and Robert I. Fox's Motion for Consolidation and for Appointment of Lead Plaintiffs and Lead Counsel (the "Speirs Affidavit" or "Speirs Aff."). Movants are fully familiar with the facts and allegations in the cases filed in this District.

[2]    There are at least sixteen cases pending in this District and at least two related cases pending in the United States District Court for the District of Puerto Rico. A motion to have all the related actions transferred and consolidated in the United States District Court for the District of Puerto Rico is presently pending before the Judicial Panel on Multi-District Litigation. Because it is unclear to which court the MDL Panel will transfer these cases, Movants have also filed a motion for consolidation and appointment of Lead Plaintiffs and Lead Counsel in the United States District Court for the District of Puerto Rico.

deficient and would not protect the value of Doral's interest-only strip ("IO Strip") portfolio in a rising interest rate environment, despite repeated reassurances to the contrary (Cmplt. ¶38 ).[3]

This Court should appoint Movants as Lead Plaintiffs for the class because, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), they are the "most adequate" to serve as Lead Plaintiffs.[4]  In fact, Movants satisfy each requirement of the PSLRA for serving as Lead Plaintiffs.  Movants are believed to have the "largest financial interest" in the relief sought by the class.  During the Class Period, Movants collectively suffered estimated losses of $3,024,795.64.  Speirs Aff., Exhibits C-E.  Their motion to be appointed Lead Plaintiffs is timely and their claims against Defendants are typical of the claims of the other class members.  Movants' interests are aligned with the interests of the class.  Finally, Movants have retained qualified counsel, agreed to serve together as co-lead plaintiffs and will vigorously prosecute the Actions.

Appointing Movants as Lead Plaintiffs also accords with Congress' intent in enacting the PSLRA.  As Congress has stated, the PSLRA was "intended to increase the likelihood that parties with significant holdings in issuers…will participate in the litigation" because, among other reasons, "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake."  H.R. Conf. Rep. No. 104-369, at 32, 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 1995 WL 709276 (Nov. 28, 1995).  Congress clearly intended to encourage large sophisticated funds, such as the 1199SEIU Fund and Activest, to serve as lead plaintiffs in

---

[3]  "Cmplt." references are to the complaint in *Finn v. Doral, et al.*, Civ. Case No. 1:05-CV-4014-RO (S.D.N.Y.), filed on April 21, 2005, attached as Ex. A to the Speirs Affidavit.

[4]  The requirements for the appointment of a lead plaintiff are found in Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the PSLRA. The PSLRA amendments are contained in Public Law 107-67, 109 Stat. 737, 15 U.S.C. §§ 77z, 78u-4.

securities class actions. Due to Movants' significant financial interest in the relief sought by the class, Movants are precisely the kind of plaintiffs that Congress intended to serve as Lead Plaintiffs.

## II.    STATEMENT OF FACTS

Doral, a financial holding company, is the largest residential mortgage lender in Puerto Rico, and the parent company of Doral Bank, a Puerto Rico-based commercial bank, Doral Securities, a Puerto Rico-based investment banking and institutional brokerage firm, Doral Insurance Agency, Inc. and Doral Bank FSB, a New York City-based federal savings bank (Cmplt. ¶ 7). Throughout the Class Period, Defendants issued numerous statements concerning the Company's operating results and financial condition. These statements were materially false and misleading because Doral had improperly valued a significant portion of its bond portfolio, specifically its IO Strips, which had the effect of materially overstating the Company's assets, return on equity, and net income (Cmplt. ¶ 38).

On April 19, 2005, Doral was forced to announce that it was restating its financial results for 2000 through 2004, to correct the accounting treatment for the value of its IO Strip portfolio. The Company announced that the restatement would result in a decrease in the fair value of the securities by approximately $600 million and that it would take a charge of $290 million to $435 million for the required adjustments (Cmplt. ¶ 47). Finally, on May 26, 2005, Doral announced that its IO Strip portfolio would decrease in value by approximately $600 million and that the Company was reviewing other matters that might require restatement, including the accounting for the deferral and recognition of mortgage origination fees and expenses and the accounting for lease payments. Doral did not indicate the amount of, or the time period for, the restatement of mortgage origination fees and expenses for lease payments.

3

The April 19th news of Doral's restatement and the devaluation of its IO Strip portfolio stands in stark contrast to the statements issued by the various Defendants throughout the Class Period.  For example, after the Company released its results for fiscal year 2000, Defendant Salomon Levis, Doral's CEO, stated that fiscal year 2000 was a "historic year" for Doral Financial.  He continued, stating that "we are optimistic that 2000 has laid the foundation for even greater achievements during 2001 and subsequent years." (Cmplt. ¶ 21).

Defendants also touted other performance metrics -- such as return on assets, return on equity, and stock-price appreciation -- as evidence of the Company's profitability and financial health during the Class Period.  For instance, in announcing Doral's 2002 financial results, which Levis characterized as "truly outstanding," Doral touted its "record" return on assets of 2.97% and return on equity of 29.08% for the year.  At the same time, Levis also touted the increase in the Company's stock price as evidence of the Company's superior performance.  He stated that "[f]or the one year period ended December 31, 2002, Doral Financial's common stock price increased by 37% compared to a decrease of 3.88% for the S&P 500 Banks Index, and has gone up approximately 238% in the last five years compared to a reduction of 6.22% in such S&P index. Also in the past 10 years, Doral Financial's stock price has increased by approximately 1,460% while the S&P 500 Banks Index increased by 172.77%." (Cmplt. ¶¶27-28).

Levis had strong incentives to inflate the Company's net income.  According to Doral's 2004 Proxy Statement, Levis's employment agreement "provides for a cash incentive bonus equal to 15% of Doral Financial's adjusted net income over a minimum threshold of a 15% return on common stockholders' equity."  In 2004, based on the Company's reported financial results, Levis received a cash bonus of $2.4 million and options to purchase 600,000 shares of Doral common stock (Cmplt. ¶ 45).

4

On January 19, 2005, the Company reported its fourth quarter and fiscal year 2004 results. The announcement reported that Doral recorded a $97.5 million pre-tax impairment charge on its IO Strips as the result of an increase in interest rates, specifically a rise in LIBOR. The next day, Doral's stock dropped $5.45 per share, or 11%, to $44.45. Defendant Levis attempted to minimize the write-down, calling the adjustment a "conservative" move to better prepare the Company for a further rise in interest rates (Cmplt. ¶ 39). In an e-mail response later that day, Levis stated that the "writedown in the fourth quarter is not related to an issue with the Bank's hedging program" (Cmplt. ¶ 40).

In Doral's Form 10-K and Annual Report for 2004, filed with the SEC on or about March 15 and 17, 2005, respectively, the Company described the impact that higher interest rates would have on the value of its IO Strip portfolio (Cmplt. ¶ 41). Based on the Annual Report, it appeared that Doral had used overly aggressive assumptions in valuing its portfolio of IO Strips and that further impairments or write downs were possible (Cmplt. ¶ 42). Impairments not only hurt the Company's reported profits, but also impact the Company's capital structure -- making it less robust than it appears.

Analysts also became concerned about the sustainability of Doral's gain-on-sale margins -- the money that the Company makes from selling off its mortgages. The creation of IO Strips is a large component of Doral's gain-on-sale and, as the yield curve flattens, the margin generated by creating IO Strips declines. On March 16, 2005, both Wachovia Securities and Merrill Lynch downgraded the stock. And on March 18, 2005, Standard & Poor's lowered its outlook for the Company's long-term debt from "stable" to "negative." S&P revised its outlook, which is often the precursor to a credit downgrade, after expressing "concern over the

sustainability of the Bank's business model'' and noting the increased risk "for lower quality earnings.'' (Cmplt. ¶ 44).

On March 16, 2005, the day after Doral filed its Form 10-K, the Company's stock dropped $7.71 to $30.58 per share; and on March 18, 2005, Doral's common stock fell an additional $6.34, or 24%, to $20.05. For the week, Doral's stock plummeted 48% (Cmplt ¶ 46).

On April 19, 2005, Doral announced that it was restating its financial results for fiscal years 2000 through 2004. In a press release, the Company stated that "management concluded that the previously filed interim and audited financial statements for the periods from January 1, 2000, through December 31, 2004, could be materially affected and, therefore, should no longer be relied on and that the financial statements for some or all of the periods included therein should be restated." On this news, shares of Doral fell $.77 per share, or almost 5%, to close at $16.15 per share in heavy volume (Cmplt. ¶ 49). On May 26, 2005, after Doral disclosed that the restatement of its IO Strip portfolio would be approximately $600 million and that the Company would also be forced to restate its mortgage origination fees and expenses related to lease payments, the stock dropped $1.48, or more than 11%, to close at $11.52.

## III.    OVERVIEW OF APPLICABLE LAW

On December 22, 1995, Congress amended the Exchange Act through the PSLRA. The PSLRA sets forth a procedure for providing notice to members of the putative class of the pendency of a class action, the claims asserted, and the class period.

Specifically, the PSLRA provides that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported class–

(I)     of the pendency of the action, the claims asserted therein, and the purported class period; and

(II)    that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

The PSLRA also sets out the requirements for selection of lead plaintiffs to oversee class actions brought pursuant to the federal securities laws. 15 U.S.C. § 78u-4(a)(3).  There is a rebuttable presumption that the "most adequate plaintiff" to serve as lead plaintiff is the person who:

(aa)    has either filed the complaint or made a motion in response to [aforementioned] notice . . .;

(bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  As set forth below, Movants satisfy each of the PSLRA's statutory requirements to serve as Lead Plaintiffs here.

## IV.    THE ACTIONS SHOULD BE CONSOLIDATED

The PSLRA establishes a two-step process for resolving lead plaintiff and consolidation issues when multiple actions asserting substantially the same claims on behalf of a class have been filed.  A court must first decide the consolidation motion and then decide the lead plaintiff issue "[a]s soon as practicable."  15 U.S.C. § 78u-4(a)(3)(B)(ii).

Consolidating actions pursuant to Fed. R. Civ. P. 42(a) is appropriate when the actions involve common questions of law and fact.  *Albert Fadem Trust v. Citigroup Inc.*, 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002); *In re PRI Automation, Inc. Sec. Litig.*, 145 F. Supp. 2d 138, 140

7

(D. Mass. 2001). This Court has broad discretion under Fed. R. Civ. P. 42(a) to consolidate cases pending within this District. *Albert Fadem Trust*, 239 F. Supp. 2d at 347.

Pursuant to the Local Rules of the Court, a civil case will be deemed related to one or more other civil cases and will be transferred for consolidation where: "(i) a substantial saving of judicial resources would result; or (ii) the just, efficient and economical conduct of the litigations would be advanced; or (iii) the convenience of the parties or witnesses would be served." S.D.N.Y. Rules for the Division of Business Among District Judges R. 15.

Presently pending in this District[5] are no fewer than sixteen related securities class action cases filed against Doral and the other Defendants.[6] These Actions are:

| Case Name | Case No. |
|---|---|
| *Finn v. Doral Financial Corp., et al.* | 1:05-cv-4014-RO |
| *Faverman v. Doral Financial Corp., et al.* | 1:05-cv-4026-RO |
| *Simons v. Doral Financial Corp., et al.* | 1:05-cv-4074-RO |
| *Grobler v. Doral Financial Corp., et al.* | 1:05-cv-4077-RO |
| *Galaxy Electronics Corp. v. Doral Financial Corp., et al.* | 1:05-cv-4087-RO |
| *Orchinik v. Doral Financial Corp., et al.* | 1:05-cv-4098-RO |
| *Bernie v. Doral Financial Corp., et al.* | 1:05-cv-4113-KMW |
| *Vu v. Doral Financial Corp., et al.* | 1:05-cv-4141-RO |
| *Faith v. Doral Financial Corp., et al* | 1:05-cv-4233-RO |
| *Borger v. Doral Financial Corp., et al.* | 1:05-cv-4250-JSR |
| *Lapat v. Doral Financial Corp., et al.* | 1:05-cv-4294-RO |
| *Scheiner v. Doral Financial Corp., et al.* | 1:05-cv-4413-RO |
| *Barich v. Doral Financial Corp., et al.* | 1:05-cv-4973-RO |
| *Janicek v. Doral Financial Corp., et al.* | 1:05-cv-5212-RO |
| *Gagov v. Doral Financial Corp., et al* | 1:05-cv-5213-UA |
| *Argent Class Convertible Arbitrage Fund (Bermuda) Ltd. v. Doral Financial Corp., et al.* | 1:05-cv-5565-UA |

The Actions all arise from the same set of events and alleged course of conduct by

---

[5] There are also two cases pending in the United States District Court for the District of Puerto Rico: *Deerfield Beach Non-Uniformed Municipal Employees Retirement Plan v. Doral Financial Corp., et al.,* 3:05-cv-01430; and *Flores v. Doral Financial Corp., et al.,* 3:05-cv-01464. *See* fn. 2, *supra*.

[6] In addition, the following derivative actions are currently pending in this District: *Freeborn v. Levis, et al.,* No. 1:05 CV 5250; *Gagov v. Levis, et al.,* No. 1:05-cv-5248; *Rosenbaum Capital, LLC v. Levis, et al.,* No. 1:05-cv-5486; and *Heimann v. Levis, et al.,* No. 1:05-cv-5548.

Defendants[7] and raise the same legal issues. Each of the Actions asserts claims pursuant to Sections 10(b) and 20(a) of the Exchange Act and alleges essentially the same set of facts. Therefore, the Actions, and any related actions that are subsequently filed in this District, should be consolidated.

The PSLRA contemplates a ninety-day period from the early notice publication to the selection of lead plaintiffs. 15 U.S.C. § 78u-4(a)(3)(B)(i). Because the selection of lead plaintiffs and lead counsel is the necessary first step to prosecute the Actions, Movants respectfully request that this Court grant the consolidation motion as soon as practicable. A prompt determination is reasonable and warranted under Fed. R. Civ. P. 42(a).

## V.    MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS FOR THE CLASS

The PSLRA provides a structure for the appointment of a lead plaintiff in "each private action arising under the Exchange Act that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). Because Movants are the "most adequate" plaintiffs, as defined by the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(iii), they should be appointed as Lead Plaintiffs for the class.

### A.  Movants' Motion To Serve As Lead Plaintiffs Is Timely

As noted, within sixty days after the publication of a notice of a class action,[8] any person who is a member of the proposed class may move the Court to be appointed lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Here, the earliest notice of a class action regarding Doral was published on April 21, 2005. *See* Speirs Aff., Ex. B. Movants are members of the proposed class and have timely moved for appointment as Lead Plaintiffs within sixty days of the notice,

---

[7] Some of the Actions name different defendants, including Doral's auditor, PricewaterhouseCoopers LLP. Others assert different class periods; the longest class period asserted is May 15, 2000 through May 26, 2005.

[8] A notice informs class members of the action and of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

in compliance with the PSLRA.  15 U.S.C. § 78u-4(a)(3)(A)(ii).  Movants therefore satisfy the

PSLRA's initial requirement.

### B.  Movants Are Believed to Have the Largest Financial Interest in the Relief Sought by the Class

Pursuant to the PSLRA, this Court should next determine which lead plaintiff applicant

has the "largest financial interest" in the relief sought by the class.  15 U.S.C. § 78u-

4(a)(3)(B)(iii)(I)(bb).  Although the PSLRA does not specifically indicate the manner in which

the "largest financial interest" should be calculated,  it provides that a plaintiff's damages in any

securities fraud class action may be measured by:

> the difference between the purchase price or sale price paid or received, as
> appropriate, by the plaintiff for the security and the mean trading price of
> the security during the period beginning immediately after the
> dissemination of information correcting the misstatement or omission and
> ending on the date on which the plaintiff sells or repurchases the security.

15 U.S.C. § 78u-4(e)(2).

Alternatively, when a plaintiff continues to hold the security that is the subject of the

action, damages may be measured by:

> the difference between the purchase or sale price paid or received, as
> appropriate, by the plaintiff for the subject security and the mean trading
> price of that security during the 90-day period beginning on the date on
> which the information correcting the misstatement or omission that is the
> basis for the action is disseminated to the market.

15 U.S.C. § 78u-4(e)(1).

In addition, courts have held that there are four factors that are relevant to the manner in

which the "largest financial interest" is calculated:  "(1) the number of shares purchased during

the class period; (2) the number of net shares purchased during the class period; (3) the total net

funds expended during the class period; and (4) the approximate losses suffered during the class

period."  *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998), citing *Lax v.*

*First Merchants Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997).

Movants believe at this time that they have the "largest financial interest" in the relief sought by the class. The charts attached with Exhibits C-E to the Speirs Affidavit fully set forth facts relevant to determine that Movants have the largest financial interest in the relief sought by the class. During the Class Period, Movants suffered estimated losses of $3,024,795.64. *See* Speirs Aff., Exhibits C-E. Movants believe they satisfy the PSLRA's second requirement to be appointed Lead Plaintiffs. Pursuant to the PSLRA, Movants with the greatest financial interest are in fact *presumptively* the "most adequate" plaintiffs to serve as Lead Plaintiffs. *See Albert Fadem Trust*, 239 F. Supp. 2d at 348; *California Pub. Employees' Ret. Sys. v. The Chubb Corp.*, 127 F. Supp. 2d 572, 576 (D.N.J. 2001) ("the most adequate plaintiff under the PSLRA is governed by a rebuttable presumption in favor of the class member with the largest financial interest in the outcome of the litigation").

Appointing Movants as Lead Plaintiffs also furthers Congress' purposes in enacting the PSLRA. The PSLRA was intended to encourage sophisticated investors with substantial holdings in the securities at issue to come forward to serve as lead plaintiffs. The lead plaintiff provision arose out of Congress' concern, reflected in the House, Senate, and Conference Committee Reports on the legislation, that some class action securities litigation had become a "lawyer-driven" enterprise, in which law firms first sought to bring cases and then later searched for plaintiffs in whose names they could sue.

Congress sought to "protect[] investors who join class actions against lawyer-driven lawsuits by giving control of the litigation to lead plaintiffs with *substantial holdings* of the securities of the issuer." Conference Report on Securities Litigation Reform, H.R. Rep. No. 104-369, 32 (1995) (emphasis added); *accord* S. Rep. No. 104-98, at 10 *reprinted in* 1995

11

U.S.C.C.A.N. 679, 1995 WL 372783 (June 19, 1995) ("[t]he lead plaintiff should actively represent the class. The Committee believes that the lead plaintiff – not lawyers – should drive the litigation.").

The PSLRA's strong preference for institutional investors as lead plaintiffs favors the appointment of the 1199SEIU Fund and Activest. *See* H.R. Rep. No. 104-369 at 34 (Congress "intend[ed] that the lead plaintiff provision will encourage institutional investors to take a more active role in securities class action lawsuits."); *Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 403 (S.D.N.Y. 2004); *In re Oxford Health Plans, Inc., Sec. Litig.,* 182 F.R.D. 42, 46 (S.D.N.Y. 1998). The 1199SEIU Fund and Activest are both sophisticated investors. Together with co-movant Fox, 1199SEIU Fund and Activest are willing to direct this litigation for the benefit of class members.

### C. Movants Satisfy the Typicality and Adequacy Requirements of Rule 23

In addition to meeting the PSLRA's requisites set forth above, a proposed lead plaintiff must also satisfy the requirements of Fed. R. Civ. P. 23 ("FRCP 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). FRCP 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

For purposes of appointing a lead plaintiff, however, a wide-ranging analysis under FRCP 23 is not appropriate at this stage of the litigation. *Sofran*, 220 F.R.D. at 402. Rather, only two requirements — "typicality" and "adequacy" of representation – must be satisfied by the proposed lead plaintiff. *Id.*; *In re Oxford Health Plans*, 182 F.R.D. at 49; *In re Lernout &*

*Hauspie Sec. Litig*. 138 F. Supp. 2d 39, 46 (D. Mass. 2001). As discussed below, Movants satisfy both the typicality and adequacy requirements of FRCP 23(a), further supporting their appointment as Lead Plaintiffs.

### 1. Movants' Claims Are Typical Of The Claims Of The Class

The typicality requirement in FRCP 23(a)(3) is met when the lead plaintiffs' claims: (i) arise from the same events or course of alleged conduct by the defendants, and (ii) are based upon similar legal theories as the claims of the class members. *See Sofran*, 220 F.R.D. at 402; *In re Lernout & Hauspie*, 138 F. Supp. 2d at 46. The typicality requirement does not require that the lead plaintiffs' claims be identical with the claims of the other class members, but rather, only that they share common elements of fact or law. *Id.*

Movants satisfy the typicality requirement of FRCP 23(a). Movants' claims and the class's claims arise from the same course of alleged conduct by Defendants, *i.e.,* Defendants' scheme to misstate Doral's financial results and overvalue the Company's IO Strip portfolio. Furthermore, Movants and class members assert similar (if not the same) violations of federal securities laws.

### 2. Movants Will Fairly and Adequately Represent the Interests of the Class

The PSLRA directs a court, when evaluating the adequacy of proposed lead plaintiffs, to limit its inquiry to the existence of any conflicts between the interests of the proposed lead plaintiffs and the members of the class. The primary elements of the adequacy requirements of FRCP 23(a)(4) are that: (i) the class representatives' interests are not antagonistic to those of the class; and (ii) the class counsel is "qualified, experienced and generally able to conduct the litigation." *Sofran*, 220 F.R.D. at 403; *see also In re Lernout & Hauspie*, 138 F. Supp. 2d at 46.

Movants' interests *are* aligned with — and certainly are not antagonistic to — the

13

interests of the other class members. Movants, like the other class members, are victims of Defendants' alleged fraud. They, like the other class members, were damaged when the truth about Doral was disclosed to the investing public. Due to their significant financial stake, interests and choice of proposed Lead Counsel, it is clear that Movants will vigorously prosecute the claims against Defendants and protect the interests of the class.

## VI.    THE COURT SHOULD APPROVE MOVANTS' CHOICE OF LEAD COUNSEL

Pursuant to the PSLRA, the lead plaintiff is permitted, subject to the Court's approval, to select and retain counsel to represent the class. 15 U.S.C. § 78u-4(a)(3)(B)(v). Movants have selected and retained Zwerling, Schachter & Zwerling, LLP (the "Zwerling Firm") to represent them and the putative class as Lead Counsel. The proposed lead counsel has extensive experience in the area of securities litigation and other complex litigation, and has prosecuted many securities fraud class actions. *See* Speirs Aff., Ex. F. The Zwerling Firm has been responsible for successful results on behalf of injured investors in numerous securities class action lawsuits, as well as legal decisions that enable litigation such as this to be successfully prosecuted. *Id.*

## VII.    CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court: (1) consolidate the Actions; (2) grant Movants' motion to appoint them as Lead Plaintiffs; and (3) approve their choice of the Zwerling Firm as Lead Counsel for the putative class.

Dated: New York, New York
        June 20, 2005

Respectfully Submitted,

**ZWERLING, SCHACHTER & ZWERLING, LLP**

By: s/ Jeffrey C. Zwerling
Jeffrey C. Zwerling (JZ7924)
Richard A. Speirs (RS8872)
Joseph Lipofsky (JL0971)
Sona R. Shah (SS4712)
41 Madison Avenue
New York, NY 10010
Tel:  (212) 223-3900
Fax:  (212) 371-5969

**ZWERLING, SCHACHTER & ZWERLING, LLP**

Kevin M. McGee
595 South Federal Highway,
Suite 600
Boca Raton, FL 33432
Tel:  (561) 544-2500
Fax:  (561) 544-2501

**HANZMAN & CRIDEN, P.A.**
Michael E. Criden
220 Alhambra Circle
Suite 400
Coral Gables, FL 33134
Tel:  (305) 357-9000
Fax:  (305) 357-9050

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Douglas M. McKeige (DM-6856)
Gerald H. Silk (GS-4565)
1285 Avenue of the Americas, 38th Floor
New York, NY  10019
Tel:  (212) 554-1400
Fax: (212) 554-1444
*Attorneys for*
*Activest Investmentgesellschaft mbH*

*Attorneys for Movants*

15